[No. B229993. Second Dist., Div. Two. Mar. 1, 2012.]

YVETTE BROWN, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

## COUNSEL

Gutierrez, Preciado & House, Calvin House and Andrew C. Rawcliffe for Defendant and Appellant.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Carlos Ramirez, Assistant Attorney General, Gail Heppell and Jessica M. Amgwerd, Deputy Attorneys General, for Board of Psychology as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Leo James Terrell and Leo James Terrell for Plaintiff and Respondent.

## OPINION

**CHAVEZ, J.**—Defendant and appellant County of Los Angeles (County) appeals from the judgment entered in favor of plaintiff and respondent Yvette Brown (Brown) after a jury returned a special verdict in Brown's favor on her claims for retaliation and for wrongful termination in violation of public policy. The County contends the trial court erred by excluding evidence that Brown's employment as a psychologist with the County Department of Mental Health (County DMH) required her to obtain a license from the state

Board of Psychology (hereafter Board of Psychology or Board), that Brown understood she had to obtain such a license but failed to do so, and that she was discharged from her employment for failure to obtain a license. Brown maintains that she met the licensure requirements because she came within the exemption accorded by Business and Professions Code section 2910. The trial court ruled as a matter of law that Brown was "licensed" under state law because she came within the "Exempt Setting" of Business and Professions Code section 2910.

Brown did not come within the plain language of Business and Professions Code section 2910. The trial court erred as a matter of law by concluding that Brown was "licensed" because she came within the exemption accorded by that statute and abused its discretion by excluding evidence that Brown failed to obtain a license. The judgment must therefore be reversed and the matter remanded for a new trial.

## FACTUAL BACKGROUND

### 1. *Brown's employment and license waiver*

The County DMH hired Brown as a "Clinical Psychologist II" in October 2001. The County's class specification for that position lists the following activities among the duties to be fulfilled by a person hired to fill the position: "Perform[] direct patient care activities including assessment and evaluation by diagnosing[,] providing individual and group therapy, and counseling." The class specification also lists "[a] license to practice as a psychologist . . . or satisfaction of waiver requirements set forth by the State" as one of the "minimum requirements" for a Clinical Psychologist II.

The County DMH's written policy on professional licenses lists a Clinical Psychologist II as a position that requires licensure and states that a "State Waiver or Psychology License" is required. The policy further states that the "DMH may forego the licensure requirement for . . . Clinical Psychologist II positions, in accordance with" Business and Professions Code section 4996.18[1] and Welfare and Institutions Code section 5751.2. Those statutory provisions accord a three- to five-year waiver period from the licensure requirements to permit persons employed as psychologists or clinical social workers to obtain the supervised professional experience required for licensure

---

[1] The County DMH's policy incorrectly refers to Welfare and Institutions Code section 4996.18. Section 4996.18, which applies to clinical social workers, is found in the Business and Professions Code.

and to allow them sufficient time to apply for, take, and pass the licensing examination. (Welf. & Inst. Code, § 5751.2; Bus. & Prof. Code, §§ 2914, subd. (d), 2941–2944, 4996.18.)

When the County hired Brown in October 2001, it obtained a license waiver for her from the State Department of Mental Health (State DMH) pursuant to Welfare and Institutions Code section 5751.2. That waiver was to expire on October 22, 2006. On October 22, 2001, Brown signed a waiver acknowledgment stating that she understood "that as a condition of my employment as a Clinical Psychologist II, I am required to be licensed by the State of California as a Psychologist" but that the County would seek from the State DMH on her behalf a five-year waiver from the licensing requirement. The acknowledgment Brown signed further stated: "Failure to obtain a psychologist license by the waiver expiry date may result in termination of my employment with the [County] DMH. [¶] It is my responsibility to ensure that I am licensed by the waiver expiry date and to provide evidence of licensure to [County] DMH."

After Brown was hired as a Clinical Psychologist II, she was assigned to the County Central Juvenile Hall, where she provided "assessment and psychological services" to juveniles in detention. During her employment Brown twice attempted, unsuccessfully, to pass the examination necessary to obtain licensure as a psychologist.

In a memorandum dated September 20, 2006, Brown's supervisor reminded her that her license waiver would expire on October 22, 2006, and requested an update on her efforts to obtain a license. On September 26, 2006, the County attempted to obtain an extension of the waiver period on Brown's behalf, but the State DMH denied the request on November 3, 2006.

## 2. *Brown's complaints about working conditions*

On October 15, 2006, Brown and 16 other County DMH employees signed a complaint against their supervisor alleging, among other things, unhealthy and unsafe working conditions, creation of a hostile work environment, abusive treatment of employees, and gross negligence and incompetence.

In a letter dated December 19, 2006, the County DMH notified Brown that it intended to discharge her from her employment as a clinical psychologist. The letter set forth the basis for Brown's discharge as "non-compliance with . . . California State Welfare and Institutions Code (WIC), Section 5751.2; guidelines set by the [State DMH], entitled Professional Licensure of

Personnel, Exemption, and Waiver; Civil Service Rule 18, Section 18.031, which describes the basis for imposing discipline, and the DMH Policy Number 600.8, Professional Licensure, which describes the minimum requirements set for the classification of Clinical Psychologist II, and your conditions of employment."

## PROCEDURAL BACKGROUND

Brown commenced the instant lawsuit on December 6, 2007. She subsequently dismissed all causes of action except her claims for retaliation in violation of Labor Code sections 6310, 6311; retaliation in violation of Labor Code sections 98.6, 1102.5, 6399.7, and Government Code section 8547; and wrongful termination in violation of public policy.

The County filed a motion for summary judgment, which the trial court denied on the ground that a triable issue of material fact existed as to whether the County DMH's reason for issuing the notice of intent to discharge Brown was pretextual. The County filed a petition for writ of mandate seeking to reverse the trial court's ruling on its motion for summary judgment, and that petition was summarily denied.

1. *Brown's motion in limine*

On July 19, 2010, Brown filed a motion in limine to exclude any evidence relating to a California state-issued psychologist license being a prerequisite for employment with the County DMH as a Clinical Psychologist II. In her moving papers, Brown argued that she was exempt from the licensing requirement pursuant to Business and Professions Code section 2910, and that the County DMH could not justify her discharge based on her failure to obtain a license. In support of her motion, Brown submitted the deposition testimony of Lavinia Snyder (Snyder), a licensing and registration coordinator for the Board of Psychology. Snyder testified in her deposition that persons employed by the County to provide psychological services are exempt from state licensing requirements so long as they provide those services solely within the scope of their employment. The County opposed Brown's motion, arguing that she did not fall within the scope of the statutory exemption. The County also submitted a request that the trial court take judicial notice of an Attorney General opinion and the legislative history of Business and Professions Code section 2910.

After considering the moving and opposition papers, the trial court advised the parties that it needed "help" in the form of "testimony" on the "issue of the exemption." In response to the trial court's request, Brown presented testimony from Annette Parino (Parino), a licensing and registration analyst

for the Board of Psychology. Parino had processed approximately 5,000 licensing applications over an 11-year period. Her job responsibilities included ensuring that license applicants' credentials and other requirements for licensure had been fulfilled before taking the licensing examination. Over the County's objection that Parino was not qualified to give a legal opinion about the licensing exemption, the trial court allowed Parino to testify that a County employee working as a psychologist is exempt from licensing. After hearing argument from the parties, the trial court granted Brown's motion in limine.

In a written decision confirming its oral ruling, the trial court found, based on the "uncontroverted testimony," that Brown "met the licensure requirements set by and demanded by the County as spelled out in the Notice of Intent to Discharge letter of December 21, 2006." Citing Parino's testimony as well as the deposition testimony of Parino's supervisor, Snyder, that an individual employed by a governmental agency to provide psychological services solely within the confines of his or her employment may do so within the "Exempt Setting" of Business and Professions Code section 2910, the trial court concluded: "Though Ms. Brown's [five]-year Waiver expired, she was nevertheless 'licensed' pursuant to State law because she was within the 'Exempt Setting' of Business and Professions Code section 2910. Ms. Brown has established that she was 'licensed' under Business and Professions Code section 2910 because: (1) she was employed by the County of Los Angeles as a Clinical Psychologist II; (2) she performed her duties as a Clinical Psychologist II solely within the jurisdiction or confines of her employment with the County of Los Angeles; (3) she did not hold herself out to the public by any title or description of activities incorporating the words 'psychology,' 'psychological,' 'psychologist,' 'psychometry,' 'psychometrics' or 'psychometrist' outside the 'Exempt Setting'; (4) she did not offer her services to the public for a fee, monetary or otherwise outside the 'Exempt Setting'; and (5) she did not provide direct health or mental health services outside the 'Exempt Setting.' Since Ms. Brown has established she was 'licensed' pursuant to State law because she was within the 'Exempt Setting' of Business and Professions Code Section 2910, she was not required by the State to possess a State issued psychologist license after the end of her [five]-year Waiver in order to be employed by the defendant as a Clinical Psychologist II." The trial court then prohibited the County from presenting any evidence that Brown was not licensed at the time her employment was terminated.

The County filed a petition for writ of mandate seeking to reverse the trial court's ruling on the motion in limine, and this court summarily denied that petition.

## 2. *Trial and jury verdict*

At trial, Brown testified that as a clinical psychologist employed by the County at Central Juvenile Hall, her duties included "assessment and providing psychological services to juveniles who come into the detention center." She explained that many of the detained juveniles "come in extremely angry that they're there, so my job is to calm them down, deescalate the anger so they'll be fit to go inside one of the rooms, the buildings."

Brown further testified that she was "licensed" to practice psychology when she received the County's notice of intent and discharge. When the County's attorney asked Brown when she obtained her license, the trial court sustained an objection that the question called for a legal conclusion and instructed the jury as follows: "The issue of whether she was licensed to practice for the County of Los Angeles is a legal question and legally she was licensed to practice for the County of Los Angeles. That's a question of law that I have determined already."

After the close of evidence, the trial court instructed the jury on Brown's licensing status as follows: "Plaintiff Yvette Brown was employed by the County of Los Angeles as Clinical Psychologist Two from 2001 to 2006. I have determined that as a matter of law, the State of California authorized Ms. Brown to continue practicing psychology for the defendant County of Los Angeles beyond March 2007, the date defendant, County of Los Angeles, terminated her from employment. This jury instruction means that you, the jury, must accept as true the fact that the State of California authorized Ms. Brown to continue practicing psychology for the defendant, County of Los Angeles, beyond March 2007, the date defendant County of Los Angeles terminated her from employment."

Following the trial court's instruction, Brown's attorney argued that the County's stated reason for discharging Brown was a lie. The jury thereafter returned a special verdict, finding that the County had retaliated against Brown for complaining about safety conditions. Judgment was entered in Brown's favor, and this appeal followed.[2]

## DISCUSSION

### I. *Licensing requirements for psychologists in California*

The licensing requirements applicable to psychologists employed in California are a disjointed collection of laws and regulations administered by

---

[2] The Board of Psychology and the California State Association of Counties filed amicus curiae briefs on appeal.

different agencies. The requirements, and various waivers and exemptions from those requirements, may be found in the Business and Professions Code, the Welfare and Institutions Code, the Health and Safety Code, the Penal Code, and regulations promulgated by the Board of Psychology. Besides the Board of Psychology, the State DMH, the State Department of Developmental Services, the Secretary of the Department of Corrections and Rehabilitation, and various local government agencies may also be involved in licensing issues pertaining to psychologists. This farflung regulatory scheme does not always fit together as an integrated whole, as the instant case demonstrates.

### A. Psychology Licensing Law

█ The Psychology Licensing Law, codified at Business and Professions Code section 2900 et seq., requires persons engaged in the practice of psychology in the State of California to be licensed by the Board of Psychology, unless an exception applies. Business and Professions Code section 2903 provides in part: "No person may engage in the practice of psychology, or represent himself or herself to be a psychologist, without a license granted under this chapter, except as otherwise provided in this chapter."[3]

To obtain licensure as a psychologist in California, a person must possess a doctorate degree in psychology or educational psychology. (Bus. & Prof. Code, § 2914, subd. (b).) In addition, an applicant must have engaged for at least two years in supervised professional experience under the direction of a licensed psychologist. (id., § 2914, subd. (c).) Regulations promulgated by the Board of Psychology state that an applicant seeking licensure as a psychologist can obtain the necessary two years of supervised professional experience "[a]s an employee of an exempt setting pursuant to section 2910 of the [Business and Professions] code." (Cal. Code Regs., tit. 16, § 1387, subd. (a)(1)(B).) Finally, an applicant for licensure must take and pass an examination given by the Board of Psychology. (Bus. & Prof. Code, §§ 2914, subd. (d), 2941.)

---

[3] "The practice of psychology" is defined as "rendering or offering to render for a fee to individuals, groups, organizations or the public any psychological service involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions, and motivations." (Bus. & Prof. Code, § 2903.) "Fee" is defined as "any charge, monetary or otherwise, whether paid directly or paid on a prepaid or capitation basis by a third party, or a charge assessed by a facility, for services rendered." (Ibid.)

### B. *Welfare and Institutions Code*

■ Welfare and Institutions Code section 5751.2, subdivision (a) makes the state licensing requirements applicable to persons employed in local mental health programs: "Except as provided in this section, persons employed or under contract to provide mental health services pursuant to this part shall be subject to all applicable requirements of law regarding professional licensure, and no person shall be employed in local mental health programs pursuant to this part to provide services for which a license is required, unless the person possess a valid license."

### C. *Health and Safety Code*

■ Health and Safety Code section 1277, subdivision (b)(1) makes the state licensing requirements applicable to psychologists employed in governmental facilities licensed by the State Department of Health Care Services. The statute provides in relevant part as follows: "Notwithstanding any provision of Part 2 (commencing with Section 5600) of Division 5 of, or Division 7 (commencing with Section 7100) of, the Welfare and Institutions Code or any other law to the contrary, except Sections 2072 and 2073 of the Business and Professions Code, the licensure requirements for professional personnel, including, but not limited to, . . . psychologists . . . in the state and other governmental health facilities licensed by the state department shall not be less than for those professional personnel in health facilities under private ownership." (*Ibid.*)

### D. *Penal Code*

■ Penal Code section 5068.5, subdivision (a) requires persons employed or under contract to provide mental health services in the state correctional system to be licensed: "Notwithstanding any other law, except as provided in subdivisions (b) and (c), any person employed or under contract to provide diagnostic, treatment, or other mental health services in the state or to supervise or provide consultation on these services in the state correctional system shall be a physician and surgeon, a psychologist, or other health professional, licensed to practice in this state."

## II. *Exemptions from licensing requirements*

### A. *Business and Professions Code section 2910*

■ Business and Professions Code section 2910 exempts from the state licensing requirement government employees who perform "activities of a

psychological nature" as part of their job duties and who meet specified conditions.[4] The statute provides in pertinent part:

"Nothing in this chapter shall be construed to restrict or prevent activities of a psychological nature on the part of persons who are salaried employees of . . . governmental agencies, provided:

"(a) Such employees are performing such psychological activities as part of the duties for which they were hired;

"(b) Such employees are performing those activities solely within the jurisdiction or confines of such organizations;

"(c) Such persons do not hold themselves out to the public by any title or description of activities incorporating the words 'psychology,' 'psychological,' 'psychologist,' 'psychometry,' 'psychometrics' or 'psychometrist';

"(d) Such persons do not offer their services to the public for a fee, monetary or otherwise;

"(e) Such persons do not provide direct health or mental health services." (Bus. & Prof. Code, § 2910.)

The term "direct health or mental health services" is not defined in the Psychology Licensing Law.

### B. *Business and Professions Code section 2909*

■ Business and Professions Code section 2909 accords a similar exemption to certain persons performing "activities of a psychological nature" within the confines or under the jurisdiction of their employment by "governmental organizations which are not primarily involved in the provision of

---

[4] Subdivision (e) was added to Business and Professions Code section 2910 in 1979. Prior to 1979, psychologists working as employees of governmental agencies were exempt from licensing so long as they performed psychological activities solely within the confines of their employment and did not hold themselves out to the public as psychologists.

The legislative history indicates that the 1979 amendment to Business and Professions Code section 2910, and a similar amendment to section 2909, were intended to restrict the exemptions accorded by those statutes. The Legislative Counsel's Digest to Senate Bill No. 230, which amended those statutes, states: "Under present law persons employed as psychologists or psychological assistants by governmental agencies need not be licensed under the Psychology Licensing Law if specified criteria are met. [¶] This bill would further restrict such exemption by excluding persons employed to provide direct health or mental health services, other than specified educational institutions as prescribed, or employed by a governmental organization which is primarily engaged in providing health or mental health services." (Legis. Counsel's Dig., Sen. Bill No. 230 (1979–1980 Reg. Sess.) 4 Stats. 1979, Summary Dig., p. 302.)

direct health or mental health services." (Bus. & Prof. Code, § 2909, subd. (c).) The statute provides in part:

"Nothing in this chapter shall be construed as restricting or preventing activities of a psychological nature or the use of the official title of the position for which they were employed on the part of the following persons, provided those persons are performing those activities as part of the duties for which they were employed, are performing those activities solely within the confines of or under the jurisdiction of the organization in which they are employed and do not offer to render or render psychological services as defined in Section 2903 to the public for a fee, monetary or otherwise, over and above the salary they receive for the performance of their official duties with the organization in which they are employed: [¶] . . . [¶]

"(c) Persons employed in positions as psychologists . . . by . . . federal state, county or municipal governmental organizations which are not primarily involved in the provision of direct health or mental health services."

The exemption accorded by Business and Professions Code section 2909 also covers employees of community health agencies who meet the minimum educational requirements and who have satisfied at least one year of the two-year supervised professional experience required for licensure as a psychologist. Subdivision (d) of section 2909 provides: "Persons who meet the educational requirements of subdivision (b) of Section 2914 and who have one year or more of the supervised professional experience referenced in subdivision (c) of Section 2914, if they are employed by nonprofit community agencies that receive a minimum of 25 percent of their financial support from any federal, state, county, or municipal governmental organizations for the purpose of training and providing services. Those persons shall be registered by the agency with the board at the time of employment and shall be identified in the setting as a 'registered psychologist.' Those persons shall be exempt from this chapter for a maximum period of 30 months from the date of registration."

Neither party contends Business and Professions Code section 2909 applies here.[5]

---

[5] Other licensing exemptions not applicable here include various "grandfather" exemptions set forth in Health and Safety Code section 1277, subdivision (b) (persons employed as psychologists while continuing their employment in the same class as of Jan. 1, 1979); Welfare and Institutions Code section 5751.2, subdivision (b) (persons employed as psychologists while continuing their employment in the same class as of Jan. 1, 1979); and Penal Code section 5068.5, subdivision (b) (psychologists employed on Jan. 1, 1985, and persons employed on Jan. 1, 1989, to supervise or provide consultation on diagnostic or treatment services).

III. *Waiver from licensing requirement*

 In addition to the licensing exemptions discussed above, the statutory scheme allows government agencies to grant temporary licensing waivers to persons employed to provide mental health services in governmental facilities and programs. The purpose of the waivers is to enable persons employed in governmental facilities and programs to obtain the two years of supervised professional experience necessary for licensure.

A. *Welfare and Institutions Code*

Welfare and Institutions Code section 5751.2, subdivision (d) allows the State DMH to accord a five-year waiver from applicable licensing requirements for psychologists employed in local mental health programs who are obtaining the experience necessary for licensure. That statute provides: "The requirements of subdivision (a) [(requiring licensing of persons employed in local mental health programs)] shall be waived by the department for persons employed or under contract to provide mental health services pursuant to this part as psychologists who are gaining the experience required for licensure. A waiver granted under this subdivision may not exceed five years from the date of employment by, or contract with, a local mental health program for persons in the profession of psychology." (*Ibid.*)

B. *Health and Safety Code*

Health and Safety Code section 1277, subdivision (b) allows the State Department of Health Care Services to accord persons employed in governmental facilities licensed by the department a five-year waiver from the state licensing requirement for persons who are gaining the professional experience necessary for licensure as a psychologist:

"(3) The requirements of paragraph (1) may be waived by the state department solely for persons in the professions of psychology . . . who are gaining qualifying experience for licensure in such profession in this state. A waiver granted pursuant to this paragraph shall not exceed three years from the date the employment commences in this state in the case of psychologists, . . . at which time licensure shall have been obtained or the employment shall be terminated . . . . For persons employed as psychologists . . . less than full time, an extension of a waiver of licensure may be granted for additional years proportional to the extent of part-time employment, as long as the person is employed without interruption in service, but in no case shall the waiver of licensure exceed . . . five years in the case of psychologists. [¶] . . . [¶]

"(5) A waiver pursuant to paragraph (3) shall be granted only to the extent necessary to qualify for licensure . . . at which time licensure shall have been

obtained or the employment shall be terminated, provided that the employee shall take the licensure examination at the earliest possible date after the date of his or her employment, and if the employee does not pass the examination at that time, he or she shall have a second opportunity to pass the next possible examination, . . . subject to a two-year limit for psychologists."

### C. *Penal Code*

A similar waiver for persons employed or under contract to provide mental health services in state correctional facilities is set forth in Penal Code section 5068.5, subdivision (c):

"(1) The requirements of subdivision (a) [(requiring licensing of psychologists and other health professionals)] may be waived by the secretary solely for persons in the professions of psychology or clinical social work who are gaining qualifying experience for licensure in those professions in this state. . . .

"(2) A waiver granted pursuant to this subdivision shall not exceed three years from the date the employment commences in this state in the case of psychologists, . . . at which time licensure shall have been obtained or the employment shall be terminated . . . . For persons employed as psychologists or clinical social workers less than full time, an extension of a waiver of licensure may be granted for additional years proportional to the extent of part-time employment, as long as the person is employed without interruption in service, but in no case shall the waiver of licensure exceed . . . five years in the case of psychologists. . . ."

### IV. *Brown's licensing status*

The trial court's determination that Brown was " 'licensed' pursuant to [s]tate law" because she was within the exemption accorded by Business and Professions Code section 2910 is a legal question that we review de novo. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### A. *Brown was not "licensed" pursuant to state law*

The trial court erred by concluding that Brown was " 'licensed' pursuant to [s]tate law" at the time of her discharge. The term "license" is defined in Business and Professions Code section 23.7 as follows: "Unless otherwise expressly provided, 'license' means license, certificate, registration, or other means to engage in a business or profession regulated by this code or

referred to in Section 1000 or 3600."[6] The authority to issue or deny a license is vested in the specific boards established under the Department of Consumer Affairs to regulate particular professions. (Bus. & Prof. Code, §§ 101, 101.6.) The Board of Psychology is the entity authorized to issue or deny licenses to psychologists. (Bus. & Prof. Code, §§ 2902, subd. (b), 2914, 2931, 2940–2944, 2960.)

Brown maintains she was "licensed" in accordance with the County DMH's policies and procedures on professional licenses because the County DMH's policy No. 600.8 defines the term "license" to include not only a license issued by the Board of Psychology, but also a "license waiver." A license waiver is not a "license" under state licensing law. (Bus. & Prof. Code, § 23.7 [" 'license' means license, certificate, registration, or other means to engage in a business or profession *regulated by this code* . . ." (italics added)].) A "licensed psychologist" is defined in Business and Professions Code section 2902 as "an individual to whom a license has been issued pursuant to the provisions of this chapter," and Brown did not possess such a license. Moreover, Brown did not possess a valid license waiver at the time the County issued its December 2006 notice of intent to discharge her. Her waiver had expired on October 22, 2006.

### B. *Brown did not come within Business and Professions Code section 2910*

The trial court erred by concluding that Brown came within the licensing exemption set forth in Business and Professions Code section 2910 at the time she was discharged from her employment. To qualify for the exemption, Brown had to meet the conditions set forth in the statute. One of those conditions is that she "not provide direct health or mental health services." (Bus. & Prof. Code, § 2910, subd. (e); see Welf. & Inst. Code, § 5601, subd. (g).) Brown does not dispute that she provided direct mental health services during her employment with the County.

Brown nevertheless contends she comes within the scope of Business and Professions Code section 2910 because she did not provide mental health services outside the "exempt setting" of her employment with the County. The trial court agreed with Brown's interpretation, relying on the testimony of Parino, a licensing analyst employed by the Board of Psychology, who stated that persons who provide direct mental health services solely within the confines of their employment with a government agency are entitled to the licensing exemption accorded by Business and Professions Code section

---

[6] Business and Professions Code section 1000 governs chiropractors and section 3600 governs osteopaths.

2910. The County argues that the exemption did not apply because Brown did not come within the plain and unambiguous language of the statute. We agree that Brown did not come within the plain language of Business and Professions Code section 2910 at the time she was discharged.

■ Under the established rules of statutory interpretation, " 'a court seeks to determine and give effect to the intent of the enacting legislative body.' [Citation.] ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' [Citation.] But if the statutory language may reasonably be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' [Citations.]" (*People v. King* (2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636]; accord, *Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42].)

■ Subdivision (e) of Business and Professions Code section 2910 does not refer to an "exempt setting" nor does it contain any qualifying or limiting language. Brown's interpretation would require us to add language to the statute, thereby intruding into the legislative function. ■ When construing a statute, a court's duty is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858; see *Wilson v. Safeway Stores, Inc.* (1997) 52 Cal.App.4th 267, 271 [60 Cal.Rptr.2d 532].) "We may not disregard the plain provisions of a statute, nor may we go beyond the meaning of the words used when they are clear and unambiguous. We may not speculate that the Legislature meant something other than what it said, nor may we rewrite a statute to make express an intention that did not find itself expressed in the language of that provision. [Citation.]" (*Wilson v. Safeway Stores, Inc., supra*, at p. 272.) The language of Business and Professions Code section 2910 is clear and unambiguous. It precludes persons who are salaried employees of governmental agencies who are providing direct health or mental health services from the licensing exemption accorded by its terms.

Amicus curiae Board of Psychology argues that Brown was exempt from licensing under Business and Professions Code section 2910, subdivision (b) but only during the five-year period covered by the license waiver the County obtained on her behalf. The Board further contends Brown was not providing "direct" mental health services during this period because she was providing

services under the supervision of a licensed psychologist and through a governmental agency that had obtained a limited waiver on her behalf. The Board maintains that Brown therefore met the condition set forth in subdivision (e) of Business and Professions Code section 2910 that she "not provide direct health or mental health services."

The Board of Psychology contends its interpretation of Business and Professions Code section 2910 is supported by the statutory licensing scheme as a whole. It argues that the licensing exemption accorded by Business and Professions Code section 2910, subdivision (b) for employees of governmental agencies who provide psychological activities "solely within the jurisdiction or confines of" such agencies must be understood in conjunction with the license waiver provisions of Welfare and Institutions Code section 5751.2. Under section 5751.2, subdivision (d), the Board maintains, Brown was allowed to provide mental health services without a psychology license while she was "gaining the experience required for licensure" as a psychologist employed by a governmental organization.

 The problem with the Board's interpretation is that the licensing waiver accorded by Welfare and Institutions Code section 5751.2 is not mentioned in Business and Professions Code section 2910. Section 2903 of the Psychology Licensing Law expressly states that "[n]o person may engage in the practice of psychology, or represent himself or herself to be a psychologist, without a license granted under this chapter, except as otherwise provided *in this chapter*." (Bus. & Prof. Code, § 2903, italics added.) Nowhere in chapter 6.6, division 2 of the Business and Professions Code is there an exception for government employees who provide direct mental health services pursuant to a licensing waiver while gaining the supervised professional experience required for licensure. (Bus. & Prof. Code, § 2900 et seq.)

The Board's interpretation of Business and Professions Code section 2910 is also inconsistent with the language of a parallel statutory exemption set forth in Business and Professions Code section 2909. Section 2909, subdivision (d) specifically covers persons who are obtaining the supervised professional experience necessary for licensure as a psychologist. The statute accords a 30-month exemption to persons employed by certain nonprofit community agencies and who have satisfied at least one year of the two-year supervised professional experience required for licensure. It provides as follows: "Persons who meet the educational requirements of subdivision (b) of Section 2914 and who have one year or more of the supervised professional experience referenced in subdivision (c) of Section 2914, if they are employed by nonprofit community agencies that receive a minimum of 25 percent of their financial support from any federal, state, county, or municipal

governmental organizations for the purpose of training and providing services. Those persons shall be registered by the agency with the board at the time of employment and shall be identified in the setting as a 'registered psychologist.' Those persons shall be exempt from this chapter for a maximum period of 30 months from the date of registration."

■ In Business and Professions Code section 2909, the Legislature expressly accorded a temporary licensing exemption for certain persons obtaining the supervised professional experience necessary for licensure as a psychologist. The absence of similar language in section 2910 indicates the Legislature did not intend to provide for such an exemption under section 2910. "Where statutes involving similar issues contain language demonstrating the Legislature knows how to express its intent, ' "the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." ' [Citation.]" (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825 [81 Cal.Rptr.3d 461].)

■ The Board of Psychology argues that the exception set forth in Business and Professions Code section 2910 must be construed to allow employees of government agencies to provide direct mental health services without a license for some period of time within the jurisdiction and confines of those agencies to enable those employees to obtain the supervised professional experience necessary for licensure. The Board maintains that such an interpretation is necessary for the various licensing waivers authorized in the Health and Safety Code, Welfare and Institutions Code, and Penal Code to function alongside the Psychology Licensing Law as a coherent statutory scheme. The language of Business and Professions Code section 2910 is not conducive to such an interpretation. The statutory scheme distinguishes between licensing exemptions and licensing waivers. A waiver is not an exemption nor is it an exception to licensing recognized in the Psychology Licensing Law. If the statutory scheme does not function as a coherent whole, the remedy lies with the Legislature.

■ The Board next argues that interpreting subdivision (e) of Business and Professions Code section 2910 to prohibit a government employee from providing "direct" mental health services during a period of supervised professional experience would render subdivision (b) of the statute superfluous but fails to explain how or why subdivision (b) would be surplusage under such an interpretation. Construing subdivision (e) in accordance with its plain and ordinary meaning, to exclude persons who provide "direct" mental health services from the licensing exemption, does not render subdivision (b) as surplusage. Subdivisions (b) and (e) of Business and Professions Code section 2910 specify two different conditions that must be

met for the licensing exemption to apply, and they cover two different types of activities. Subdivision (b), read in context, covers "activities of a psychological nature" and subdivision (e) covers "direct health or mental health services." The Legislature's use of different terms to describe the activities covered in subdivisions (b) and (e) indicates that those activities are not the same. A person may thus provide "activities of a psychological nature" solely within the jurisdiction or confines of his or her employment under subdivision (b) but nevertheless may be ineligible for the licensing exemption because he failed to meet the condition set forth in subdivision (e) that he or she "not provide direct health or mental health services."

Finally, the Board of Psychology supports its interpretation of Business and Professions Code section 2910 by citing its own regulations.[7] It argues that section 1387 of title 16 of the California Code of Regulations "clearly establishes that trainees can engage in direct mental health services" without a psychology license during their supervised professional experience. We need not determine whether Brown was engaged in "direct" mental health services during the period of her supervised professional experience or whether Business and Professions Code section 2910 exempted her from the state licensing requirement during this period. We need only determine whether the statutory exemption applied at the time Brown was discharged from her employment, and we conclude that it did not.[8]

V. *The judgment must be reversed*

 The erroneous exclusion of evidence is grounds for reversal if, in light of the entire record, it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 254 [7 Cal.Rptr.2d 101].) In this case, the trial court's exclusion of evidence concerning Brown's licensing status precluded the County from establishing a legitimate nonretaliatory reason for terminating Brown's employment. That error was prejudicial to the County.

---

[7] We grant the Board's request for judicial notice of those regulations and of the declaration of Parino, filed concurrently with the Board's amicus curiae brief.

[8] The Board of Psychology agrees with this conclusion. It maintains that Business and Professions Code section 2910 did not exempt Brown from the state licensing law after October 22, 2006, the expiration date of the five-year waiver the County DMH obtained on her behalf.

## DISPOSITION

The judgment is reversed and the matter remanded for a new trial. Each party will bear their respective costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 16, 2012, S201587.