Filed 8/11/21  P. v. Anguiano CA5
Opinion following rehearing

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> OCTAVIO JUAREZ ANGUIANO, <br><br> Defendant and Appellant. | F079147 <br><br> (Super. Ct. No. VCF253827A) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Michael K. Mehr for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Octavio Juarez Anguiano pled no contest to a gang-related assault with a firearm (Pen. Code,**[1]** §§ 245, subd. (a)(2) & 186.22, subd. (b)).  About six years later (and four

---

**[1]** All undesignated statutory references are to the Penal Code.

years after sentencing), he moved to vacate his plea due to ongoing deportation proceedings. The trial court denied his motion.

Anguiano now appeals the denial. For reasons that follow, we affirm.

## BACKGROUND

**Charges**

The Tulare County District Attorney charged Anguiano with the following crimes: Shooting at an inhabited dwelling (§ 246; count 1); assault with a firearm (§ 245, subd. (a)(2); counts 2, 3, 4); and evading (Veh. Code, § 2800.2, subd. (a); Count 5). The charges included numerous gang-related crime enhancements (§ 186.22, subd. (b); counts 1-5) and various firearm enhancements.

**Plea Hearing**

At a change of plea hearing, the trial court advised Anguiano, "If you're not a citizen of the United States, your plea of guilty or no contest will result in your being deported from the United States, denied readmission, naturalization, permanent residency." Anguiano indicated he wanted to plead no contest, to which the court replied, "Are you pleading no contest not because you're admitting guilt, but because you want to avoid exposure to greater punishment should you be convicted of the charged offenses?" He replied, "Yes, your Honor," and then pled to one count of assault with a firearm and admitted a gang-related crime enhancement.

The understanding at the time of the plea was Anguiano would serve nine years in prison. That nine-year sentence was ultimately imposed at a later sentencing hearing. The remaining charges were dismissed.

**Motion to Vacate**

After Anguiano was released from prison, he moved to vacate his plea pursuant to section 1473.7. In the motion, his counsel argued Anguiano "clearly didn't understand that even a *no-contest* plea would cause him to be automatically and mandatorily deported and forever barred from any future ability to re-immigrate or even just visit his

2.

family." He added his trial counsel "clearly had alternative plea options he could have presented to the prosecution that would carry the same criminal consequences while avoiding the drastic classification under immigration law as an aggravated felony and thereby preserving [his] eligibility for possible defenses to deportation." Finally, he claimed "[Anguiano] would not have entered into his plea agreement had he had knowledge that this conviction would trigger his mandatory and permanent removal and lifetime ineligibility for any future immigration benefits."

At the hearing on the motion, Anguiano testified he had a conversation about the immigration consequences of the plea with his trial counsel. The precise conversation was excluded as hearsay. He indicated he knew he would be subject to deportation but believed defenses to it were available to him and he would not have settled the case had he known deportation was "automatic and mandatory …."

On cross-examination, Anguiano acknowledged he agreed to a nine-year sentence in lieu of life in prison. He could not recall why he settled the case, but denied it was to avoid a life sentence.

During argument on the motion, the court interrupted the argument and this exchange followed:

> THE COURT: Excuse me. But then wasn't the judge who took the plea – didn't he give them exactly the right advice? He told him – he didn't tell him in the language of 1016, did he?
>
> [DEFENSE COUNSEL]: Your Honor, I don't believe that the legislature 1473.7 specified that a 1016 warning would obviate or completely negate the defendant's understanding.
>
> THE COURT: Let me address that. I have two questions, then. If that's the case, why should a judge waste his breath and time and even give an advisement?
>
> [DEFENSE COUNSEL]: California law requires that all defendants be aware.

3.

THE COURT: Answer the question. Why even waste our time, then?

[DEFENSE COUNSEL]: So that defendants will be aware of their consequences.

THE COURT: Second of all, this judge not only gave the language of 1016 – what's the language? The language of 1016 says "may."

[DEFENSE COUNSEL]: May.

THE COURT: [May] wasn't said in this case. Was it?

[DEFENSE COUNSEL]: No.

THE COURT: He said, "You will be deported"; correct?

[DEFENSE COUNSEL]: Your Honor, I don't believe a criminal judge has the knowledge necessarily to know whether or not there are defenses available to deportation.

THE COURT: Did he not – didn't the judge give him exactly the right advice?

[DEFENSE COUNSEL]: I don't believe –

THE COURT: In this case, based –

[DEFENSE COUNSEL]: I don't believe so. I don't believe that the judge says that you will absolutely be disqualified from any and all defenses.

THE COURT: Because he is. Because of the charges that he pled to, in fact, he is going to be deported; correct?

[DEFENSE COUNSEL]: That's correct.

THE COURT: So the judge gave him exactly the right advice; correct?

4.

[DEFENSE COUNSEL]:  That doesn't mean that he understood that as being absolute.

THE COURT:  Then we go back to why would a judge – why does he waste his time if he gives him exactly the right advice?  And knowing that, the person enters a plea and comes back later and says, "Well, I didn't know"?

The court then concluded, "I have a case where it's clear that the advice given was proper, absolutely proper, not equivocal, it was unequivocal as to what would happen in this case, plus the defendant received a tremendous bargain in this case by his plea agreement, I can't believe that he would want to go to trial and face a life sentence when he got a good deal.  So I'm denying the motion."

## **DISCUSSION**

There are three issues on appeal.  One, did the court incorrectly conclude the plea judge's immigration advisement was a bar to relief?  Two, did the court fail to consider plea counsel's ineffectiveness in negotiating "an immigration safe disposition …?"  Three, did the court err in sustaining the hearsay objections?  We find no prejudicial errors.

## **I.  The Court Did Not Determine An Immigration Advisement Is A Bar To Relief**

Section 1473.7 permits a person to "file a motion to vacate a conviction" if "[t]he conviction … is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (§ 1473.7, subds. (a) & (a)(1).)  "[T]o establish a 'prejudicial error' …, a person need only show by a preponderance of the evidence: 1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and 2) had he understood the consequences, it is reasonably

probable he would have instead attempted to 'defend against' the charges." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862.)

Prejudicial error "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*People v. Vivar* (2021) 11 Cal.5th 510, 530 (*Vivar*).)

"The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor. [Citation.] As the United States Supreme Court recently explained …, it could be reasonably probable that a defendant 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial,' where 'avoiding deportation was *the* determinative factor for [the defendant].' " (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.)

In determining whether the defendant would insist on an alternative resolution, the focus is not placed on "whether the prosecution would actually 'have offered a different bargain' — rather" the focus is on whether "*the defendant*" could "expect or hope a different bargain" was possible. (*Vivar, supra,* 11 Cal.5th at p. 529.) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences," he or she must corroborate "such assertions with ' "objective evidence." ' " (*Id.* at p. 530.)

A trial court's decision to grant or deny a section 1473.7 motion is reviewed independently. " '[U]nder independent review, an appellate court exercises its

independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] … ' "[I]ndependent review is *not* the equivalent of de novo review ...." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] … In section 1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] … Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra,* 11 Cal.5th at p. 528, fn. omitted.)

A trial court warning that deportation "*will* result" is not a bar to relief. (*People v. Camacho* (2019) 32 Cal.App.5th 998. 1011, fn. 8.) "In evaluating the court's [warning], "[t]he defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial." ' " (*People v. Patterson* (2017) 2 Cal.5th 885, 896.) The court's warning is a " 'generic advisement' … and … 'is not designed, nor does it operate, as a substitute for such advice' of defense counsel regarding the applicable immigration consequences in a given case." (See *In re Hernandez* (2019) 33 Cal.App.5th 530, 545 [concluding "the word 'will' " in a plea form is generic advice and does not adequately explain when deportation is "mandatory"].)

A trial court warning is nonetheless relevant to evaluate the moving party's credibility. The court here properly considered it in evaluating Anguiano's credibility and concluded the warning, "plus the … tremendous [plea] bargain," left Anguiano lacking credibility. Contrary to Anguiano's claim, the court did not use the warning as a categorical bar to relief.

The court's credibility resolution is supported by the evidence and entitled to deference because it is based on the court's personal observation. (*Vivar, supra,* 11 Cal.5th at pp. 527-528.) For example, Anguiano told the plea court he settled his case to avoid potential life in prison and expressed no concern when informed he would be

deported. At the section 1473.7 motion hearing, Anguiano claimed he could not remember why he settled his case. The court was not required to believe his uncorroborated testimony and entitled to infer his ignorance was feigned. (*Ibid.*)

In conclusion, we find the court did not utilize the prior immigration warning as an absolute bar to relief. Rather, it properly considered the warning as evidence in assessing Anguiano's credibility. (See *People v. Perez* (2018) 19 Cal.App.5th 818, 830 (*Perez*) [defendant not credible in light of court's "unequivocal" warning "about the immigration consequences of a guilty plea" that he "would be deported" if he pled guilty].)

## II. Anguiano Did Not Prove Plea Counsel Was Ineffective

Next, Anguiano argues "an immigration safe disposition … was available in this case" and his plea counsel was ineffective for failing to negotiate one. We disagree.

"To prevail, [Anguiano] must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, as judged by 'prevailing professional norms' [citation], and (2) 'but for counsel's unprofessional errors, the result of the proceeding would have been different' [citations]; that is, 'a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have' " pursued a different resolution.[2] (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116-1117 (*Olvera*).)

It is true "that the mere failure to investigate an immigration-neutral alternative disposition in plea bargaining could constitute deficient performance. [Citation.] But [Anguiano's] showing is insufficient to prevail under this theory of deficiency" for multiple reasons. (*Olvera, supra,* 24 Cal.App.5th at p. 1118.)

---

[2] We recognize "the moving party 'need not establish ineffective assistance of counsel,' and 'even if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that 'counsel's representation 'fell below an objective standard of reasonableness' " " 'under prevailing professional norms.' " ' " (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.) This particular issue presents a classic ineffective assistance claim.

Most importantly, Anguiano did not present any evidence at the motion hearing to support his contention plea counsel was ineffective. There is no declaration by his plea attorney confirming the failure to "consider alternatives in the disposition." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 222 (*Cruz-Lopez*).) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence." ' " (*Vivar, supra,* 11 Cal.5th at p. 530.) "An allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence …." (*Cruz-Lopez, supra,* at pp. 223-224.)

On appeal, appellate counsel has identified a specific alternate resolution that would have helped to mitigate any immigration consequence. That resolution entails a plea to shooting at an inhabited dwelling (§ 246; count 1) while admitting a gang-related crime enhancement (§ 186.22, subd. (b)(1)(B)), totaling 10 years in prison. According to appellate counsel, this resolution would have protected Anguiano's ability to avoid deportation.

At first blush, the resolution is enticing because it presumably preserves each of the People's interests, i.e., a conviction for a strike offense, a gang-related enhancement, and lengthy incarceration. The problem is a gang-related shooting at an inhabited dwelling is punishable by life in prison, not the 10 years suggested by appellate counsel. (§ 186.22, subd. (b)(4)(B).) Accordingly, we cannot find plea counsel was deficient for failing to offer the proposed resolution. Because Anguiano has not identified a reasonable alternative to the actual plea, his uncorroborated allegation plea counsel was ineffective fails.[3]

---

[3] In a related vein, we emphasize in determining whether the defendant would insist on an alternative resolution, the focus is not placed on "whether the prosecution would actually 'have offered a different bargain' — rather" the focus is on whether "*the defendant*" could "expect or hope a different bargain" was possible. (*Vivar, supra,*

### III.  The Hearsay Exclusion Was Error But Harmless

The trial court excluded as hearsay both Anguiano's testimony regarding what plea counsel told him regarding immigration consequences and the reason he believed he could defend against deportation.  He now challenges those rulings on appeal.  The People relegate the claim to a footnote and contend the trial court did not err and, if it did, the error was harmless.

We conclude the court erred in excluding the evidence as hearsay.  " ' "If a fact in controversy is whether certain words were spoken or written and not whether the words were true, evidence that these words were spoken or written is admissible as nonhearsay evidence." ' " (*People v. Smith* (2009) 179 Cal.App.4th 986, 1003.)  A fact in controversy in this case was whether plea counsel provided ineffective assistance of counsel.  Counsel's actual advice was thus admissible evidence.  The court erred in concluding otherwise.

The error in this case, however, is harmless.  "The erroneous exclusion of evidence is grounds for reversal if, in light of the entire record, it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Brown v. County of Los Angeles* (2012) 203 Cal.App.4th 1529, 1550.)  That standard is not met.

Candidly, it is unclear what Anguiano's testimony would potentially have proven because the evidence was excluded and not otherwise placed on the record.[4]  We will assume the excluded testimony was favorable to Anguiano and view it in the light most

_____

11 Cal.5th at p. 529.)  We are disinclined to believe Anguiano would have pursued a plea bargain to serve life in prison when he was in fact offered a bargain to serve nine years.

[4] There was no offer of proof to preserve the excluded testimony for appeal.  As noted, the People addressed the hearsay argument in a cursory fashion and did not raise any forfeiture issue.

favorable to him, i.e., his plea counsel specifically told him he could settle the case by pleading to assault with a firearm and still defend against deportation.

We do not find it reasonably probable the trial court would have credited Anguiano's testimony—and thus granted the motion—had it known he settled his case with reliance on plea counsel's advice. Two reasons inform our belief. First, the *fact* Anguiano believed he could defend against deportation notwithstanding his no contest plea was admitted into evidence. Second, the *basis* for that belief, although excluded, was uncorroborated.

The uncorroborated basis for Anguiano's belief adds little to his credibility. (See *Cruz-Lopez, supra,* 27 Cal.App.5th at pp. 223-224 [uncorroborated claims regarding counsel's ineffectiveness are "meaningless" because a defendant's statements alone are suspect]; accord, *Vivar, supra,* 11 Cal.5th at p. 530.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States* (2017) 137 S.Ct. 1958, 1967; *Cruz-Lopez, supra,* 27 Cal.App.5th at p. 224 [same].)

The record here lacks substantial contemporaneous evidence to corroborate Anguiano's ineffective assistance claim. In sum, we find the trial court would not have granted the motion to vacate had it allowed Anguiano to specifically recite plea counsel's immigration advice. Accordingly, we find the erroneous exclusion of that evidence harmless.

## IV. Prejudice Analysis

As we have said, to establish "prejudicial error" under section 1473.7, a person need only show by a preponderance of the evidence that: (1) he did not "meaningfully understand" or "knowingly accept" the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to "defend against" the charges by rejecting

11.

the plea deal, i.e., he was prejudiced because he did not meaningfully understand the consequences of the plea.

On the first element, the type of "error" required by section 1473.7, a defendant need show only his own error in not understanding or knowing his plea has actual or potential adverse immigration consequences. In other words, the "defendant's own error" in misunderstanding—or complete failure to anticipate—the immigration consequences of a plea bargain is an independent basis sufficient to grant relief under section 1473.7. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 870-871 (*Mejia*); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).)

On the second element, to show prejudice, a defendant must show that had he understood the consequences, it is reasonably probable he would have instead attempted to "defend against" the charges by rejecting the plea deal. Even if we assumed error in this case, Anguiano has not carried his burden to show prejudice.

In conducting the prejudice analysis, the question is whether Anguiano has shown, by a preponderance of the evidence, that he would not have entered the plea had he known it would render him deportable. Based on the record, we conclude he has not met his burden on these issues, that he was advised of the deportation consequences of his plea, and said he understood them.

As set forth in *Vivar*, the main factor in the prejudice analysis is evidence of a defendant's strong or significant ties to this country—where the threat of deportation can outweigh the threat of significant jail time, i.e. evidence supporting the inference that the defendant would not have pled guilty had he understood he would lose those ties, particularly his family, as a consequence. This is lacking in Anguiano's declaration and testimony.[5]

---

[5] The only evidence of Anguiano's ties to the United States was his testimony that he had been a lawful permanent resident since 1992 and the hearsay declaration of his counsel, Andrew Fishkin, to the effect that in addition, Anguiano's "entire extended

12.

Perhaps most important is the issue of credibility and the role it has played in each of these cases. The *Vivar* trial court was examining a cold record, with no live witnesses or testimony, hence, no real credibility issues were presented when the Supreme Court independently reviewed the evidence. In *Mejia* and *Camacho*, the trial court made no relevant implied or express credibility determinations, thereby allowing the appellate court to independent review the evidence. However, in this case, Anguiano testified. We defer to the trial court's implied credibility determinations in affirming the denial order.

Indeed, Anguiano's entire presentation to the court was based on his own uncorroborated statements. "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence." ' " (*Vivar, supra,* 11 Cal.5th at p. 530.) There is little corroborating evidence in this case.

Finally, the trial court impliedly found Anguiano lacked credibility. That finding is entitled to deference because it is supported by the lack of corroborating evidence *and* based on the trial court personally observing his testimony. (*Vivar, supra,* 11 Cal.5th at pp. 527-528 ["appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses."]; *People v. Uribe* (2011) 199 Cal.App.4th 836, 856 [trial court's implied resolution of credibility entitled to deference if supported by the record].) We conclude the court did not err in denying the motion to vacate the plea. (See *Lee, supra,* 137 S.Ct. at p. 1967 ["Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."].)

family [resides] in the United States as either Lawful Permanent Resident Aliens or Unites States citizens .…" The family members are not identified. Compare the conclusory language in Anguiano's evidence in contrast to the detailed evidence set forth in *Vivar, supra,* 11 Cal.5th at p. 520; *Mejia, supra,* 36 Cal.App.5th at pp. 872-873; and *Camacho, supra,* 32 Cal.App.5th at p. 1011.

## **DISPOSITION**

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:

FRANSON, Acting P.J.

SMITH, J.

14.