[No. S129052. May 15, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
SEAN KING, Defendant and Appellant.

## COUNSEL

Hilda Scheib, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Gregg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—Subdivision (a)(1) of Penal Code section 12020 (section 12020(a)(1)),[1] prohibits the possession of a variety of weapons. Does it require a culpable mental state, or is it a "public welfare offense," for which proof of a culpable mental state is not required? We conclude that section 12020(a)(1) is not a public welfare offense, and that the prosecution must prove the possessor's knowledge of the weapon's illegal characteristics.

We also conclude that when, as here, the prohibited weapon is a "short-barreled rifle"—in this case a rifle that had been altered to reduce its overall length to less than 26 inches—the prosecution need only establish the defendant's knowledge of the shortness of the rifle, not its precise dimensions. The Court of Appeal held that the trial court's failure to instruct on knowledge required reversal of defendant's conviction for illegally possessing the rifle, concluding that the evidence was in conflict as to whether he knew that the rifle was shorter than the legally allowed 26 inches in overall length specified in the statute. Because the uncontested evidence established defendant's knowledge of the rifle's size, we reverse the judgment of the Court of Appeal.

## I

On December 4, 2001, San Francisco police officers executed a search warrant at a house occupied by defendant, his mother, and his brother. From a workbench in the garage they retrieved a loaded rifle, the stock of which had been sawed off, so that its overall length was 24 1/8 inches. In defendant's bedroom, they found methamphetamine and narcotics paraphernalia.

Defendant was charged with possession of a short-barreled rifle (§ 12020(a)(1)), selling or furnishing methamphetamine (Health & Saf. Code, § 11379), possession of methamphetamine (Health & Saf. Code, § 11377), possession of narcotics paraphernalia (Health & Saf. Code, § 11364), and other crimes not relevant here.[2]

At trial, defendant admitted he knew the rifle was in the workbench drawer, and that he "probably picked it up to look at it" while cleaning the

---

[1] Unless otherwise stated, all further citations are to the Penal Code.

[2] Defendant was charged in a 39-count information with kidnapping, drugging, robbing, threatening, and repeatedly sexually assaulting a prostitute, crimes that collectively carried a maximum sentence of more than 500 years in prison. The jury acquitted defendant on 29 counts. It deadlocked on six other counts, with either 10 or 11 votes for acquittal on each count, and the prosecution elected not to retry defendant on those charges. The jury convicted defendant only of the weapon and drug charges previously mentioned.

workbench, but he denied ownership of the rifle, claiming it must have belonged to his brother or one of his brother's friends. He said he did not know the length of the rifle.

With respect to the violation of section 12020(a)(1), the trial court gave this standard instruction: "Every person who possesses a rifle with an overall length of less than 26 inches is guilty of [violating section 12020(a)(1)]. [¶] There are two kinds of possession: actual possession and constructive possession. [¶] 'Actual possession' requires that a person knowingly exercise direct physical control over a thing. [¶] 'Constructive possession' does not require actual possession, but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons. [¶] One person may have possession alone, or two or more persons together may share actual or constructive possession. [¶] In order to prove this crime . . . each of the following elements must be proved: [¶] . . . [a] person possessed any rifle with an overall length of less than 26 inches."

The jury convicted defendant of the crimes previously mentioned, and the trial court sentenced him to a term of five years and four months in prison, eight months of which were attributable to the violation of section 12020(a)(1).

The Court of Appeal reversed defendant's conviction for violating section 12020(a)(1). It held that the trial court committed prejudicial error in not instructing the jury that to convict defendant, the prosecution was required to prove that he knew or reasonably should have known the illegal characteristic of the short-barreled rifle he was charged with possessing. We granted the Attorney General's petition for review.

## II

Section 12020 prohibits the possession of various "unusual, sophisticated weapons, some with mysterious and evil-sounding names . . . ." (*People v. Taylor* (2001) 93 Cal.App.4th 933, 938 [114 Cal.Rptr.2d 23].) It includes such exotic items as a fléchette dart, a shuriken, and a shobi-zue, as well as more commonplace weapons such as blackjacks, billy clubs, and metal knuckles.[3] Among the prohibited items is a "short-barreled rifle." The

---

[3] Section 12020(a)(1) provides: "Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison: [¶] (1) Manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or *possesses* any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any fléchette dart, any bullet containing or carrying an explosive agent, any ballistic knife, any multiburst

phrase "short-barreled rifle" is a term of art that includes not only rifles with a barrel less than 16 inches long, but also rifles whose overall length is less than 26 inches, regardless of the length of the barrel. (§ 12020, subd. (c)(2).)[4] Here, the rifle seized from the garage was 24 1/8 inches long.

At issue is whether the Legislature intended section 12020(a)(1) to be a public welfare offense, or whether the Legislature intended the prosecution to prove that the defendant had a culpable mental state, or mens rea, in which case we must decide the precise nature of that mental state.

■ The basic rules of statutory construction are well established. "When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body." (*People v. Braxton* (2004) 34 Cal.4th 798, 810 [22 Cal.Rptr.3d 46, 101 P.3d 994].) " 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) But if the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " (*People v. Yartz* (2005) 37 Cal.4th 529, 538 [36 Cal.Rptr.3d 328, 123 P.3d 604]; see also *People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [124 Cal.Rptr.2d 464, 52 P.3d 648].)

■ Although the language of section 12020(a)(1) does not specifically mention a culpable mental state, this does not mean that the Legislature did not intend to require one. As a general rule, no crime is committed unless there is a union of act and either wrongful intent or criminal negligence. (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 [98 Cal.Rptr.2d 466, 4 P.3d 297]; see § 20.) This rule, which is "firmly embedded" in " 'the principles of Anglo-American criminal jurisprudence' " (*Staples v. United States* (1994) 511 U.S. 600, 605 [128 L.Ed.2d 608, 114 S.Ct. 1793]) is so basic that wrongful intent

---

trigger activator, any nunchaku, any short-barreled shotgun, *any short-barreled rifle*, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, any cane sword, any shobi-zue, any air gauge knife, any writing pen knife, any metal military practice handgrenade or metal replica handgrenade, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag." (Italics added.)

[4] A rifle is also defined as "short-barreled" if it may be "readily restored" so as to fall within the other definitions of a short-barreled rifle; if it is a part or combination of parts designed and intended to be converted into a short-barreled rifle; or if it is a combination of parts that could be readily be assembled into a short-barreled rifle. (§ 12020, subd. (c)(2).)

or criminal negligence "is an invariable element of every crime unless excluded expressly or by necessary implication" (*People v. Vogel* (1956) 46 Cal.2d 798, 801, fn. omitted [299 P.2d 850]; see also *People v. Coria* (1999) 21 Cal.4th 868, 876 [89 Cal.Rptr.2d 650, 985 P.2d 970]) and "penal statutes will often be construed to contain such an element despite their failure expressly to state it" (*In re Jorge M., supra*, at p. 872; see also *Staples v. United States, supra*, at pp. 605–606).

Proof of a culpable mental state is, however, not required for "public welfare offenses." These crimes generally involve the violation of statutes that are purely regulatory in nature and seek to protect the health and safety of the public. (*Staples v. United States, supra*, 511 U.S. at pp. 606–607; *In re Jorge M., supra*, 23 Cal.4th at p. 872.) Examples of such statutes are furnishing alcohol to a minor (*In re Jennings* (2004) 34 Cal.4th 254, 266 [17 Cal.Rptr.3d 645, 95 P.3d 906]), sale of adulterated food (*In re Casperson* (1945) 69 Cal.App.2d 441, 443 [159 P.2d 88]) and driving with a prohibited blood-alcohol concentration (*Ostrow v. Municipal Court* (1983) 149 Cal.App.3d 668 [197 Cal.Rptr. 40]). (See also 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 17, pp. 220–222.) In the words of this court: " '[Public welfare] offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.' " (*People v. Coria, supra*, 21 Cal.4th at p. 877.)

The Attorney General here contends that section 12020(a)(1) is a public welfare offense. Although he acknowledges that a violation of section 12020(a)(1) requires "proof of the defendant's knowledge of the *existence* of the weapon" the defendant is accused of possessing, he argues that the crime does not require proof of the defendant's "knowledge of the contraband character which renders the weapon illegal." As explained below, we disagree.

Section 12020 was enacted in 1953 as part of the Dangerous Weapons Control Law (§§ 12000–12520). As originally enacted, the statute stated: "*Any person in this State who* manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or *possesses any* instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sandclub, sandbag, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition, or who carries concealed upon his person any dirk or dagger, is guilty of a felony, and upon conviction shall be punishable by imprisonment in the county jail not exceeding one year or in a state prison for not less than one year nor more than five years." (Stats. 1953, ch. 36, § 1,

p. 653, italics added.) The statute was derived from a similarly worded uncodified statute enacted three decades earlier. (Stats. 1923, ch. 339, § 1, p. 696; see also Stats. 1917, ch. 145, § 1, p. 221.)

Since 1953, the Legislature has amended section 12020 many times to expand the list of prohibited weapons, and to add definitional subdivisions describing many of those weapons. Possession of a short-barreled rifle, at issue here, became prohibited in 1988. (Stats. 1988, ch. 1269, § 2 et seq., p. 4215.) But the statutory language we italicized in the preceding paragraph (any person who possesses a weapon listed in the statute is guilty of violating the statute) has remained unaltered.

Two decisions of this court, *People v. Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100] (*Grubb*), and *People v. Rubalcava* (2000) 23 Cal.4th 322 [96 Cal.Rptr.2d 735, 1 P.3d 52] (*Rubalcava*), bear upon the requisite mental state for violations of section 12020(a)(1).

In *Grubb*, police officers found a small baseball bat, taped and with part of the handle broken off, in the trunk of the defendant's car. He was convicted of possessing a "billy" in violation of section 12020. He argued that the term "billy" was unconstitutionally vague. We disagreed. We explained that an item commonly used for a nonviolent purpose, such as a baseball bat or a table leg, could qualify as a billy, but only "when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose." (*Grubb, supra*, 63 Cal.2d at pp. 620–621, fn. omitted.) Although "[t]he prosecution need not show the intent of the possessor to use the instrument in a violent manner" (*id.* at p. 621, fn. 9) a defendant "may be able to demonstrate an innocent usage of the object" (*id.* at p. 621). The burden, however, is on the defendant to show that possession of the weapon was for an innocent purpose. (*Ibid.*)

Thereafter, in *Rubalcava*, we held that the crime of carrying a concealed dirk or dagger (§ 12020, subd. (a)) "contain[s] a 'knowledge' element" (*Rubalcava, supra*, 23 Cal.4th at p. 332) because it "criminalizes ' "traditionally lawful conduct" ' " (*id.* at p. 331). We explained: "[T]o commit the offense, a defendant must still have the requisite *guilty mind*: that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' (§ 12020, subds. (a), (c)(24).) A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is therefore not guilty of violating section 12020." (*Id.* at p. 332, fn. omitted.)

Thus, contrary to the Attorney General's contention here, a violation of section 12020(a)(1) is not a public welfare offense subjecting the offender to strict liability, but instead it requires a culpable mental state, as we made clear in *Grubb* and in *Rubalcava*. As *Grubb* pointed out, the "innocent usage" of a billy, one of the items prohibited in section 12020, does not violate that section. (*Grubb, supra,* 63 Cal.2d at p. 621.) And as *Rubalcava* noted, the crime of carrying a concealed dirk or dagger, also prohibited in section 12020, is "*not . . .* a strict liability offense"; "to commit the offense, a defendant must still have the requisite *guilty mind . . . .*" (*Rubalcava, supra,* 23 Cal.4th at pp. 331–332.)

In an effort to distinguish *Rubalcava, supra,* 23 Cal.4th 322, the Attorney General points out that the crime of carrying a concealed dirk or dagger, which was involved in *Rubalcava,* appears in subdivision (a)(4) of section 12020, rather than in subdivision (a)(1), which prohibits possession of a short-barreled rifle and is at issue here. Thus, he argues that our holding in *Rubalcava* that carrying a concealed dirk or dagger is not a public welfare offense is not controlling here. We disagree. At the time of the offense in *Rubalcava,* subdivision (a) of section 12020 was not divided into subparagraphs, as it is now. Instead, all the prohibited weapons listed in section 12020, including possession of a short-barreled rifle, the offense in this case, were listed together in subdivision (a).[5] Thus, our conclusion in *Rubalcava* that carrying a concealed dirk or dagger was *not* a public welfare offense also applies to any other weapon that was then listed in subdivision (a) of section 12020 and is now specified in subdivision (a)(1) of that statute.

The Attorney General also relies on two decisions by the Court of Appeal holding that section 12020 is a public welfare offense. They are *People v. Valencia* (1989) 214 Cal.App.3d 1410, 1415 [263 Cal.Rptr. 301], and *People v. Azevedo* (1984) 161 Cal.App.3d 235, 240 [207 Cal.Rptr. 270]; in accord is a third case, *People v. Lanham* (1991) 230 Cal.App.3d 1396 [282 Cal.Rptr. 62]. (But see *People v. Prochnau* (1967) 251 Cal.App.2d 22, 30 [59 Cal.Rptr. 265] [stating in dictum that to prove a violation of section 12020, the prosecution must prove knowledge of the weapon's "contraband character"].) The Court of Appeal decisions in *Valencia, Azevedo,* and *Lanham* have, however, been superseded by our later decision in *Rubalcava, supra,* 23 Cal.4th 322, which reached a contrary conclusion. To the extent they are inconsistent with *Rubalcava* and this opinion, those Court of Appeal decisions are disapproved. After we decided *Rubalcava,* the Court of Appeal in *People v. Taylor, supra,* 93 Cal.App.4th 933, 941, a decision authored by Presiding Justice Scotland, correctly held that section 12020 requires a culpable mental state.

---

[5] After the defendant's commission of the offense in *Rubalcava, supra,* 23 Cal.4th 322, but before our decision in that case, the Legislature divided subdivision (a) of section 12020 into parts (1) through (4). (Stats. 1999, ch. 129, § 3.5.)

The Attorney General insists that subdivision (a)(1) of section 12020 sets forth a public welfare offense because all the weapons listed in that subdivision "share two things in common: their readily concealable nature and their lack of any lawful, utilitarian purpose." He contends: "There is no such thing as the 'innocent' possession" of the weapons listed in section 12020(a)(1) because they "simply cannot lawfully be possessed at all."

Contrary to the Attorney General's assertion, many of the weapons listed in section 12020(a)(1) do have a lawful, utilitarian purpose. For instance, as we pointed out in *Grubb, supra,* 63 Cal.2d at page 621, a baseball bat or a table leg, each of which unquestionably has lawful, utilitarian purposes, may nevertheless constitute a "billy," possession of which violates section 12020(a)(1). Indeed, many prohibited items in section 12020(a)(1)—a cane gun, a belt buckle knife, an air gauge knife, and a writing pen knife, to name but a few—have an obvious lawful, utilitarian purpose, but because they are also disguised weapons, their possession is illegal.[6] Even sawed-off rifles have a lawful purpose, in certain limited circumstances that are enumerated in the Penal Code (§§ 12095–12099), and are discussed on the Attorney General's own Web site. (See <http://caag.state.ca.us/firearms/dwcl/ 12095.htm> [as of May 15, 2006].) It is highly unlikely that the Legislature intended that a person possessing an item listed in section 12020(a)(1) for its lawful, utilitarian purpose, but unaware of the characteristic that makes possession of the item illegal, would nevertheless be guilty of violating section 12020(a)(1). An example would be a person who borrows a cane for the legitimate purpose of using it as an aid in walking, unaware that a gun is hidden inside it, making its possession illegal under section 12020(a)(1).

Having concluded that the Legislature intended a culpable mental state for a violation of section 12020(a)(1), we now have to determine what precisely that mental state is.

In *In re Jorge M., supra,* 23 Cal.4th 866 (*Jorge M.*), this court examined the Legislature's intent when it enacted the Roberti-Roos Assault Weapons Control Act of 1989 (§§ 12275–12290), which prohibits the possession of unregistered assault weapons. To determine the Legislature's intent, *Jorge M.* looked at factors such as the act's legislative history, other laws discussing

---

[6] A cane gun is a "firearm mounted or enclosed in a stick, staff, rod, crutch, or similar device, designed to be . . . used as . . . an aid in walking, if the firearm may be fired while mounted or enclosed therein." (§ 12020, subd. (c)(5).) A belt buckle knife is "a knife which is made an integral part of a belt buckle . . . ." (*Id.,* subd. (c)(13).) An air gauge knife is "a device that appears to be an air gauge but has concealed within it a pointed, metallic shaft that is designed to be a stabbing instrument . . . ." (*Id.,* subd. (c)(18).) A writing pen knife is "a device that appears to be a writing pen but has concealed within it a pointed, metallic shaft that is designed to be a stabbing instrument . . . ." (*Id.,* subd. (c)(19).)

the mental state generally required for criminal offenses, the severity of the punishment for the crime, and the difficulty prosecutors would have in proving a defendant's mental state. This court then concluded that in enacting the Assault Weapons Control Act, the Legislature intended the crime of possessing an unregistered assault weapon (§ 12280, subd. (b)) to require proof that the offender knew *or reasonably should have known* that the firearm he or she possessed had characteristics that made it an assault weapon. To require solely a defendant's actual knowledge, we said, could not have been the Legislature's intent because "[a]n actual knowledge element has significant potential to impair effective enforcement" of the Assault Weapons Control Act (*Jorge M., supra*, 23 Cal.4th at p. 884), and "would predictably constitute a heavy burden for the prosecution" (*id.* at p. 885).

The holding of *Jorge M., supra*, 23 Cal.4th 866, requiring the prosecution either to prove a defendant's actual knowledge or to satisfy a lesser "reasonably should have known" requirement, does not apply here, however. At issue in *Jorge M.* was the Assault Weapons Control Act. Here, we are dealing with section 12020, a statute that does not involve assault weapons. As discussed earlier, we concluded in *Rubalcava, supra*, 23 Cal.4th at pages 331–332, that the Legislature must have intended section 12020 to require proof of a defendant's actual knowledge. This would not impose an unduly heavy burden on the prosecution, because, as explained below, proving a defendant's knowledge of a short-barreled rifle's illegal characteristic generally will not be too difficult a task.

■ First, the prosecution must prove that the item had the necessary characteristic to fall within the statutory description. It must also prove that the defendant knew of the characteristic. That is, it must prove that a defendant charged with possession of a short-barreled rifle knew the rifle was unusually short, but the defendant need not know the rifle's actual dimensions. Similarly, a defendant charged with illegally possessing a cane sword must know that the cane contained a sword, and a defendant charged with possessing a writing pen knife must know that the pen contained a stabbing instrument. Knowledge can, of course, be proved circumstantially. Further, the prosecution need not prove that the defendant knew there was a law against possessing the item, nor that the defendant intended to break or violate the law.

■ The prosecution need not prove the defendant's knowledge of the rifle's precise length. Short-barreled rifles are illegal simply because they are short, which makes them "suitable for unlawful purposes because of their concealability and ease of handling." (*People v. Rooney* (1993) 17 Cal.App.4th 1207, 1211 [21 Cal.Rptr.2d 900]; see also *People v. Stinson* (1970) 8 Cal.App.3d 497, 500 [87 Cal.Rptr. 537].) A person possessing a short-barreled rifle, and having actually observed the weapon, necessarily knows of

its shortness, and thus knows its illegal characteristic, whether or not the person knows how many inches long the weapon is. That is particularly true of the rifle in this case, the stock of which had been crudely sawed off to reduce its overall length. To require the prosecution to prove that a defendant knows the precise length of a rifle prohibited by section 12020(a) would make convictions for possessing such weapons virtually impossible to obtain, because few criminals would take the time to measure their rifles.

## III

We now apply our construction of section 12020(a)(1) to the facts of this case. Here, when the trial court instructed the jury on the elements of the crime of illegally possessing a short-barreled rifle, it did not mention that the prosecution must prove defendant's knowledge of the short-barreled rifle's illegal characteristic, namely, its shortness. The court erred by failing to give this instruction because, as we have explained in part II, *ante*, the prosecution was required to prove that defendant knew of the rifle's illegal shortness.

The Court of Appeal held that the instructional error described above was prejudicial error, requiring reversal of defendant's conviction for violating section 12020(a)(1). It pointed out that the sawed-off rifle that defendant was charged with possessing was 24 1/8 inches long, less than two inches shorter than the minimum permitted length of 26 inches, and "thus not visibly different in length from rifles which may be possessed lawfully." It also noted that the rifle was found in a common area of the house (the garage) that was not exclusively used by defendant, but was shared with his mother and brother. The Court of Appeal reasoned that, based on defendant's testimony that he did not own the rifle and that it "possibly" belonged to his brother or his brother's friend, the jury could have concluded that he was unaware of the rifle's illegal characteristic. We disagree.

The undisputed evidence presented at trial showed that defendant was aware of the shortness of the rifle he was charged with possessing, because he admitted he had seen it in the drawer of a workbench in the garage and "probably picked it up to look at it." True, he testified that he did not know that the rifle was less than 26 inches long, but as we explained earlier, once he saw the rifle, the stock of which had been crudely sawn off, he was necessarily aware of the weapon's shortness, which is the characteristic that makes its possession illegal. (See p. 627, *ante*.) Because the undisputed evidence here showed that defendant knew of the rifle's shortness, the trial court's failure to instruct the jury that defendant's knowledge of the rifle's illegal characteristic was an element of the crime charged was harmless under any standard.

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court with directions to reinstate defendant's conviction for violating section 12020(a)(1).

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.