Filed 7/24/14  P. v. Owens CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS OWENS,<br><br>    Defendant and Appellant. | 2d Crim. No. B248606<br>(Super. Ct. No. 2011033313)<br>(Ventura County) |

Nicholas Owens appeals the judgment entered after he pled guilty to possession of a controlled substance for sale (Health & Saf. Code, § 11351), and possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)).  The trial court suspended imposition of sentence and placed appellant on three years formal probation with terms and conditions including that he serve one year in county jail.  Appellant contends the court erred in denying his motion to suppress under Penal Code section 1538.5.[1]  We affirm.

### FACTS AND PROCEDURAL HISTORY

On the afternoon of September 15, 2011, Ventura Police Officer Eric Jackson was on patrol when he saw appellant driving a 1963 Chevy pickup truck.  Officer Jackson observed that the truck's rear license plate was placed in the rear window.  The

---

[1] We summarily denied appellant's petition for writ review of the court's ruling. (*Owens v. Superior Court, County of Ventura* (July 18, 2012, B242378).)

officer did not see any straps, bolts, or anything else holding the license plate in place. From the officer's perspective, "[i]t appeared it was just sitting in the lip, lying up against the back window, leaving it free to swing forward or move about if the vehicle took a quick turn."

Officer Jackson decided to conduct a traffic stop to investigate a suspected violation of Vehicle Code section 5201.[2] The officer sought to "determine whether or not the license plate was securely fastened and not just lying up against the window in a manner that could have fallen forward or jostled around during the movement of the vehicle."

Officer Jackson approached appellant's truck and asked for his license and registration. As appellant was looking for the documents, the officer saw a large machete on the dashboard, a couple of folding knives throughout the cab, and a "push-knife" attached to the underside of the dashboard.[3] Officer Jackson became concerned for his safety, so he ordered appellant out of the truck to conduct a patdown search. As appellant was exiting the truck, the officer saw a set of metal knuckles attached to his belt and two folding knives clipped to his pocket.

Officer Jackson ordered appellant to put his hands in the air and told him he was under arrest for possession of the metal knuckles (Pen. Code, § 21810). Appellant raised his hands and said he had a gun in his pocket. Another officer who had arrived at the scene as the stop was being conducted searched appellant and removed a loaded .22-caliber revolver from one of his pockets. The officers searched appellant's truck and found (1) a methamphetamine pipe in plain view in a compartment on the inside of the truck's door; (2) several additional knives and a lunch pail that contained a

---

[2] Unless otherwise noted, all further statutory references are to the Vehicle Code. Subdivision (a) of section 5201 provides in relevant part that "[l]icense plates shall at all times be securely fastened to the vehicle for which they are issued so as to prevent the plates from swinging, shall be mounted in a position so as to be clearly visible, and so that the characters are upright and display from left to right, and shall be maintained in a condition so as to be clearly legible."

[3] A push-knife is a weapon intended to be held in a closed palm with the blade extending between the middle and ring fingers.

digital scale, plastic baggies bearing logos, and bags containing approximately 5 grams of heroin, one-quarter gram of methamphetamine, and two ounces of marijuana; (3) a backpack holding more metal knuckles, a switchblade, a set of throwing knives, and drug paraphernalia including two heroin pipes; and (4) a zippered gun case containing a box of live .22-caliber ammunition.

Appellant's father, William Owens, was familiar with the manner in which appellant's license plate was placed in the rear window of his truck. The license plate never became unlodged while Owens was working on the truck or the many times he had been in the truck as driver or passenger. Two days prior to appellant's arrest, Owens inspected the truck and determined that the license plate was secure.

Appellant moved to suppress the evidence found in his truck and on his person. In his written motion, appellant asserted that the traffic stop, his subsequent detention and arrest, and the search of his truck were all conducted in violation of the Fourth Amendment. At the hearing on the motion, however, appellant focused exclusively on the stop and told the court, "it doesn't matter in this case whether there was a machete. It doesn't matter whether there was a gun. None of that matters. The issue is very narrow. [¶] But for the police officer being wrong about the law and stopping [appellant] none of this evidence would have existed." The court denied the motion, reasoning that the stop was lawful because Officer Jackson had sufficiently articulated a reasonable suspicion that appellant's license plate was not securely fastened to his truck as required under section 5201.

## DISCUSSION

### *The Traffic Stop*

Appellant contends the court erred in denying his suppression motion because the initial stop of his truck was conducted in violation of the Fourth Amendment. We disagree.

In reviewing the denial of a suppression motion, we must resolve all factual conflicts in the manner most favorable to the trial court's ruling. (*People v. Woods* (1999) 21 Cal.4th 668, 673.) We defer to the court's express and implied findings if supported

3

by substantial evidence, yet exercise our independent judgment in determining whether the challenged search or seizure is lawful based on those facts. (*Id.* at pp. 673–674.)

Unreasonable searches and seizures violate the Fourth Amendment. (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) A detention is reasonable and thus lawful "'. . . when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*Ibid.*) "Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed. [Citations.]" (*Ibid.*; *People v. Souza* (1994) 9 Cal.4th 224, 231.)

Officer Jackson articulated facts sufficient to support a reasonable suspicion that appellant's rear license plate was not "securely fastened" to his truck as required under section 5201. The officer explained that "[i]t appeared it was just sitting in the lip, lying up against the back window, leaving it free to swing forward or move about if the vehicle took a quick turn." Appellant contends Officer Jackson's stated belief that the license plate might move or fall was unreasonable because he admitted he could see the plate was placed under the window's rubber gasket. As the prosecutor correctly noted, however, it is not common knowledge that a license plate can be "securely fastened" in this manner. From the officer's stated perspective, the plate appeared as if it might be vulnerable to movement if appellant were to quickly stop, quickly turn, drive at an accelerated speed, or face different road conditions.

Appellant claims an objective view of the circumstances compels the conclusion Officer Jackson was acting on a mere "hunch" that appellant's license plate was not secured to his truck in compliance with section 5201. Relying on *Irwin v. Superior Court* (1969) 1 Cal.3d 423, 427, appellant argues that his detention was unlawful because the positioning of the license plate was "as consistent with innocent activity as with criminal activity." This proposition and the authority upon which it relies were expressly disapproved over thirty-five years ago in *In re Tony C.* (1978) 21 Cal.3d 888, 894: "Reconsidering the matter, we are of the view that the *Irwin* dictum cannot be

4

squared with the rule that a reasonable suspicion of involvement in criminal activity will justify a temporary stop or detention. Under that standard, if the circumstances are 'consistent with criminal activity,' they permit - even demand - an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.' [Citation.] No reason appears for a contrary result simply because the circumstances are also 'consistent with lawful activity,' as may often be the case. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal - to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' [Citation.]" (*Id.* at p. 894.) This fully explains and approves of Officer Jackson's conduct in detaining appellant.

As we have explained, it was objectively reasonable for Officer Jackson to suspect that a license plate merely placed in the lip of a 50-year-old truck's rear window, without any other visible means of it being secured to the vehicle, was in fact not secure. In arguing to the contrary, appellant places great weight on Officer Jackson's admission that he never saw appellant's license plate move as he followed him down several long city blocks and watched him make a turn. The officer also testified, however, that he was driving two car lengths behind appellant at a slow speed and that "[f]rom the distance I was at I really wouldn't be able to see any shaking [of the license plate] back and forth, so to speak, where it would be shaking up against the back of the window. I could not see from my point of view."

Appellant also urges us to find that Officer Jackson's decision to stop him "was based on his mistake of law that a license plate must be securely fastened with fastening devices" such as straps or bolts. He claims that any ambiguity as to whether section 5201 requires such fastening devices must be construed in his favor pursuant to the rule of lenity.

5

Appellant misconstrues the proffered basis of Officer Jackson's belief that appellant's license plate was not "securely fastened" for purposes of section 5201. The officer did not testify to any belief that straps, bolts, or any other particular type of fastening device was necessary; rather, he merely noted that he observed no such devices and could not tell if the plate was otherwise secured. As the trial judge aptly put it: "Because the legislature chose to use the word securely, I could certainly understand why an officer in Officer Jackson's position would believe that this license plate was not securely attached." The officer thus did not violate the Fourth Amendment by stopping appellant to investigate further.

*People v. Butler* (1988) 202 Cal.App.3d 602, which appellant cites, does not compel a different result. The defendant in that case was stopped for driving with tinted windows. Although section 26708.5 prohibits some forms of tinting, it provides an exception for tinted safety glass that complies with certain standards. The officer who conducted the stop testified that he did so because the defendant's windows were tinted and the officer "'didn't like the idea of the tinted windows.'" (*Id.* at p. 606.) The Court of Appeal concluded that "[w]ithout additional articulable facts suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop." (*Id.* at p. 607.) Officer Jackson, unlike the officer in *Butler*, articulated a reasonable basis for believing that appellant was driving in violation of the Vehicle Code.

*Appellant's Detention and Arrest and the Search of his Truck*

Appellant alternatively claims that his detention following the traffic stop was unduly prolonged, that he was arrested without probable cause, and that the warrantless search of his truck was unlawful. As we have noted, appellant raised these claims in his written motion but effectively abandoned them at the suppression hearing. Appellant thereby induced the prosecutor to refrain from offering any argument as to those claims, and the court to limit its ruling accordingly. Consequently neither the prosecutor nor the trial court addressed the issue, leaving the record devoid of any discussion or resolution of these claims. They are abandoned.

6

In any event, all three claims fail on the merits. Appellant never challenged his patdown search, which was plainly lawful under *Terry v. Ohio* (1968) 392 U.S. 1, and its progeny. Once the officer saw that appellant was in possession of metal knuckles, there was probable cause for his arrest. Whether appellant knew the metal knuckles could be used as a weapon was an issue for trial. (*In re Martin Alonzo L.* (2006) 142 Cal.App.4th 93, 96-97.) In any event, the totality of the circumstances gave the officer probable cause to believe appellant possessed them with the requisite intent. (See *ibid.*; see also *People v. King* (2006) 38 Cal.4th 617, 627 [a defendant's knowledge that an item in his or her possession has the characteristics of a weapon "can . . . be proved circumstantially"].)

Finally, the search of appellant's truck was lawful under the automobile exception to the warrant requirement. After appellant was found in unlawful possession of weapons, the officers could lawfully search his truck, including any closed containers therein, for additional weapons. (*People v. Waxler* (2014) 224 Cal.App.4th 712, 718; *People v. Nicholson* (1989) 207 Cal.App.3d 707, 711-712.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:



GILBERT, P. J.



YEGAN, J.

7

Kent Kellegrew, Judge

Donald D. Coleman, Judge

Superior Court County of Ventura

_____

Stephen P. Lipson, Public Defender, Michael C. McMahon, Chief Deputy, Supriya Bhat, William M. Quest, Deputy Public Defenders, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.