Filed 10/3/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY WILLIAM VAUGHN,<br><br>      Defendant and Appellant. | A139318<br><br>(Contra Costa County<br>Super. Ct. No. 05-120702-6) |

Former Penal Code section 12072, subdivision (d) (hereafter section 12072(d))[1] provides, "Where neither party to [a firearms] transaction holds a dealer's license issued pursuant to [former] Section 12071, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to [former] Section 12082."[2] Despite the statutory language, appellant, who is not a licensed dealer, argues the prosecution must prove that he knew that the person who purchased a firearm from him was also unlicensed. After weighing the *Jennings* factors (*In re Jennings*

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

[1] All undesignated section references are to the Penal Code. For convenience, we hereafter refer to former section 12072 as section 12072.

[2] Effective January 1, 2012, section 12072(d) was repealed and reenacted as section 27545 with identical language except for the internal section references. (Stats. 2010, ch. 711, §§ 4, 6.) This repeal and reenactment, as well as the repeal and reenactment of the remainder of section 12072 and other related sections, was "intended to be entirely nonsubstantive in effect." (§ 16005.) A number of exceptions to section 12072(d) were set forth in former section 12078 and are currently found in sections 27850-27966; appellant does not contend any are applicable here.

1

(2004) 34 Cal.4th 254, 268 (*Jennings*)), we reject appellant's contention and affirm his conviction for violating section 12072(d).

## BACKGROUND

In early 2011, Barry Martin began working as an informant for law enforcement, purchasing firearms from prohibited persons. At the time, Martin supported himself by selling items for other people on the Internet. In March, appellant informed Martin he had a rifle for sale. In April, after the two negotiated the price, appellant came to Martin's garage and sold him a rifle. Martin was not a licensed firearms dealer.

Appellant testified that he first met Martin shortly before he sold him the rifle. Martin told appellant he sold guns on the Internet and appellant testified he therefore "assumed" Martin was a "gun broker." Appellant had a prior felony conviction.

Appellant was convicted of being a felon in possession of a firearm (former § 12021, subd. (a)(1)) and unlawfully transferring a firearm (§ 12072(d)). The trial court suspended imposition of sentence and placed appellant on probation for five years. This appeal followed.

## DISCUSSION

### I. *Section 12072(d)*

The jury was instructed on the elements of section 12072(d) as follows: "1. The defendant transferred possession or control of a firearm to Barry Martin; [¶] 2. The defendant knew he was transferring a firearm to Mr. Martin; [¶] 3. The defendant had previously been convicted of a felony; and [¶] 4. Neither the defendant nor Mr. Martin was a licensed firearms dealer and neither the defendant nor Mr. Martin arranged to have the transfer accomplished through a licensed firearms dealer." Appellant argues we should read into section 12072(d) a scienter element requiring a defendant's knowledge that the other party to the firearms transaction was unlicensed. As the People note, appellant did not object to the jury instruction below. However, the omission does not preclude our review. "[I]t is well settled that no objection is required to preserve a claim for appellate review that the jury instructions omitted an essential element of the charge." (*People v. Mil* (2012) 53 Cal.4th 400, 409.)

2

"The basic rules of statutory construction are well established. 'When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body.' [Citation.] ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent." ' " (*People v. King* (2006) 38 Cal.4th 617, 622 (*King*).) The plain language of section 12072(d) is silent with respect to knowledge that the other party is unlicensed. However, "[t]hat the statute contains no reference to knowledge or other language of mens rea is not itself dispositive." (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 (*Jorge M.*).) "For criminal liability to attach to an action, the standard rule is that 'there must exist a union, or joint operation of act and intent, or criminal negligence.' [Citation.] '[T]he requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it." (*Jennings, supra,* 34 Cal.4th at p. 267.) "The prevailing trend in the law is against imposing criminal liability without proof of some mental state where the statute does not evidence the Legislature's intent to impose strict liability." (*Ibid.*)

" 'Equally well recognized, however, is that for certain types of penal laws, often referred to as public welfare offenses, the Legislature does not intend that any proof of scienter or wrongful intent be necessary for conviction. "Such offenses generally are based upon the violation of statutes which are purely regulatory in nature and involve widespread injury to the public. [Citation.] 'Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.' " ' " (*Jennings, supra,* 34 Cal.4th at p. 267.)

3

Our Supreme Court has deemed certain factors to be "a 'useful' analytical framework 'where the legislative intent [regarding mens rea] is not readily discerned from the text [of the law] itself.' " (*Jennings, supra,* 34 Cal.4th at p. 268.) These factors are " '(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime ("Other things being equal, the greater the possible punishment, the more likely some fault is required"); (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts ("The harder to find out the truth, the more likely the legislature meant to require fault in not knowing"); (6) the difficulty prosecutors would have in proving a mental state for the crime ("The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced"); [and] (7) the number of prosecutions to be expected under the statute ("The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault").' " (*Ibid.*)

In this case, the statutory context is a significant factor. Section 12072 contains numerous provisions prohibiting certain firearms transactions. In some of these provisions, unlike section 12072(d), the statute expressly contains a scienter requirement. For example, one provision prohibits selling or transferring firearms under certain circumstances "to any person whom [the seller or transferor] *knows or has cause to believe* is not the actual purchaser or transferee of the firearm." (§ 12072, subd. (a)(4), italics added.) Another provision prohibits "*knowingly*" selling a firearm to a person prohibited from possessing firearms under certain statutes; a separate provision prohibits selling a firearm to "any person whom [the seller] *has cause to believe* to be" such a person. (§ 12072, subds. (a)(1)–(2), italics added.)

Moreover, another provision of section 12072 is, like section 12072(d), silent with respect to knowledge of the characteristic of the other party to the transaction: "No person licensed under Section 12071 shall supply, sell, deliver, or give possession or control of a handgun to any person under the age of 21 years or any other firearm to a

4

person under the age of 18 years." (§ 12072, subd. (b).)  However, an enhanced penalty is provided for violations "involving the delivery of any firearm to a person who the dealer *knows, or should know*, is a minor." (§ 12072, subd. (g)(2)(F), italics added.)  The express language imposing a knowledge requirement to trigger an enhanced penalty demonstrates a legislative intent that an ordinary violation of subdivision (b) does *not* require knowledge of the recipient's age.  (See *Jennings, supra,* 34 Cal.4th at p. 273.)

Accordingly, when the Legislature intended the violation of a certain provision of section 12072 to require the defendant knew or should have known of a characteristic of the other party to the firearms transaction, it expressly included the requirement. Conversely, when the Legislature did not intend such a knowledge requirement, it left the provision silent with respect to knowledge.  This statutory context strongly suggests that in section 12072(d), the absence of plain language requiring knowledge that the other party was unlicensed means the Legislature did not intend to include an element that the defendant knew or should have known this fact.  " 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' " (*Jennings, supra,* 34 Cal.4th at p. 273.)  In *Jennings*, the California Supreme Court considered whether the Legislature intended a criminal statute to include a knowledge requirement when the statutory language was silent on the matter. The court noted statutes appearing "in the same portion" of the relevant code which did include an express knowledge requirement and concluded:  "Because the wording of these statutes shows the Legislature, if it wishes, knows how to express its intent that knowledge be an element of an offense, the absence of such a requirement in [the statute at issue] indicates it intended no such requirement." (*Id.* at pp. 272–273.)  This analysis applies equally here.[3]

---

[3] Our Supreme Court has construed a former section of the Dangerous Weapons' Control Act prohibiting the possession of a variety of weapons to require the defendant's knowledge of the weapon's illegal characteristics.  (*King, supra,* 38 Cal.4th at p. 620, 623

The legislative history is consistent with this conclusion. Section 12072 was enacted in 1953 as part of the Dangerous Weapons' Control Law (former §§ 12000-12520) and was amended numerous times in the following decades. The statute as originally enacted contained plain language imposing a knowledge requirement with respect to certain characteristics of the other party to a firearms transaction: "No person shall sell, deliver, or otherwise transfer any pistol, revolver, or other firearm capable of being concealed upon the person to any person whom he *has cause to believe* to be within any of the classes prohibited by Section 12201 from owning or possessing such firearms, nor to any minor under the age of 18 years. . . ." (Stats. 1953, ch. 36, § 1, p. 658, italics added.)[4] This language indicates that a violation of the provision regarding transferring firearms to prohibited persons includes an element that the defendant should have known the transferee was a prohibited person. However, the immediately following clause regarding transfers to minors contains no such language. Accordingly, the apparent legislative intent was not to require that a defendant knew or should have known the transferee was a minor.

Like the provision regarding transfer to minors, the original version of section 12072(d) was silent regarding knowledge the other party was unlicensed: "Where neither

[construing former § 12020, subd. (a)].) This decision does not impact our analysis. The section at issue appeared in a different article of the Dangerous Weapons' Control Act. More significantly, no other provision in former section 12020 included language clearly indicating a knowledge requirement.

[4] The originally enacted section 12072 provided, in its entirety: "No person shall sell, deliver, or otherwise transfer any pistol, revolver, or other firearm capable of being concealed upon the person to any person whom he has cause to believe to be within any of the classes prohibited by [former] Section 12201 from owning or possessing such firearms, nor to any minor under the age of 18 years. In no event shall any such firearm be delivered to the purchaser upon the day of the application for the purchase thereof, and when delivered such firearm shall be securely wrapped and shall be unloaded. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer any such firearm to any other person within this State who is not personally known to the vendor. Any violation of the provisions of this section is a misdemeanor." (Stats. 1953, ch. 36, § 1, p. 658.) An earlier uncodified statute contained the same substantive language. (Stats. 1923, ch. 339, § 10, p. 701.)

6

party to the transaction holds a dealer's license, no person shall sell or otherwise transfer any such firearm to any other person within this State who is not personally known to the vendor." (Stats. 1953, ch. 36, § 1, p. 658.) The express exception for private transactions when the buyer was personally known to the seller further highlights the lack of an express knowledge requirement regarding unlicensed status.

The purpose of the "personally known" exception was explained in *People v. Bickston* (1979) 91 Cal.App.3d Supp. 29, 33 (*Bickston*): "Personal knowledge of the buyer by the casual seller is important to prevent sales to persons prohibited by section 12021 from owning or possessing firearms when it is remembered that the casual seller does not have access to the Department of Justice registration system." The Legislature removed this exception in 1990 as part of a multi-faceted bill whose purpose, according to a Senate floor analysis, was "to impose greater control on the sale and transfer of all firearms, in order to ensure that they do not fall into the hands of offenders or the mentally incompetent." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 497 (1989-1990 Reg. Sess.) as amended Feb. 5, 1990, p. 4.) The analysis includes the author's comment that the then-current system of background checks is "riddled with exceptions and loopholes," including private firearms sales for which no background check is required. (*Id.*, p. 5.) Increasing the proportion of sales conducted through a licensed dealer "ensure[s] that a background check with the Department of Justice will be conducted." (*Id.*, p. 2.) This legislative focus is consistent with public welfare offenses, which are " ' "purely regulatory in nature" ' " and " ' " 'enacted for the protection of the public health and safety.' " ' " (*Jennings, supra,* 34 Cal.4th at p. 267.)

The relevant remaining factors yield mixed results. The punishment for a violation of section 12072(d), without any aggravating conditions, is a misdemeanor punishable by up to six months imprisonment or a fine of up to $1,000, or both. (§ 19; § 12072, subd. (g)(1).) This punishment, while a "greater penalty than that imposed for most strict liability public welfare offenses," is still "relatively light." (*People v. Davis* (2005) 126 Cal.App.4th 1416, 1436; see *Jennings, supra,* 34 Cal.4th at p. 274 [finding no

7

knowledge element in crime with penalty of six months to one year imprisonment and/or $1,000 fine].)

However, the punishment can, in cases like the present one, be increased to a felony. If the firearm involved in the transaction is a handgun, a violation may be charged as a felony or misdemeanor and is punishable by imprisonment up to one year in county jail or pursuant to section 1170, subdivision (h), and/or by a fine of up to $1,000. (§ 12072, subd. (g)(3)(E).) A violation is a felony punishable by up to four years imprisonment if the defendant has a prior conviction of violating section 12072 or other sections prohibiting certain firearms transfers; if the defendant has a prior conviction for certain offenses; if the defendant is prohibited by certain statutes from possessing firearms; or if the defendant actively participates in a criminal street gang. (§ 12072, subd. (g)(2)(B)–(E).) This punishment is substantially more than that of a typical public welfare offense. "[A] higher than normal penalty does not necessarily preclude a crime from being a public welfare offense; the severity of the punishment is, instead, a factor in the overall calculus in determining whether proof of a mental element must be implied." (*Jennings, supra,* 34 Cal.4th at p. 274.) As our Supreme Court has cautioned, "[t]he Legislature's choice of potential felony punishment for [a] violation . . . suggests that correspondingly strong evidence of legislative intent is required to exclude mens rea from the offense." (*Jorge M., supra,* 23 Cal.4th at p. 880.)

The potential harm to the public of permitting firearms transfers between unlicensed parties is not insignificant. " 'The general purpose of The Dangerous Weapons[] Control Law ([former] § 12000 et seq.) is to control the threat to public safety in the indiscriminate possession and carrying about of concealed and loaded weapons.' " (*Garber v. Superior Court* (2010) 184 Cal.App.4th 724, 730.) Section 12072(d) ensures regulations governing licensed firearms dealers—most notably, background checks (see former § 12076)—will be followed. Absent these provisions, sales of firearms to unauthorized persons could increase. (See *Bickston, supra,* 91 Cal.App.3d Supp. at p. 33.) The Legislature's concern with enforcing this provision is made clear by other provisions of section 12072(d) prohibiting certain transactions made with the intent to

8

avoid the requirements of section 12072(d). (§ 12072, subd. (a)(5)(B)(i) [prohibiting acquiring a firearm for the purpose of selling, transferring, or loaning it, if the person has intent to avoid the provisions of § 12072(d)]; § 12072, subd. (a)(4) [prohibiting transferring a firearm to anyone whom the transferor "knows or has cause to believe is not the actual purchaser or transferee of the firearm" if the transferor has "(A) Knowledge that the firearm is to be subsequently loaned, sold, or transferred to avoid the provisions of subdivision . . . (d)"].)

The next factor is the defendant's opportunity to ascertain the relevant fact. On the one hand, firearms licenses or a certified copy must be displayed in an easily seen location on the licensee's premises. (Former § 12071, subd. (b)(2).) On the other hand, complete fulfillment of the licensing requirement includes a federal firearms license, "[a]ny regulatory or business license, or licenses, required by local government," a seller's permit from the State Board of Equalization, and a certificate of eligibility from the Department of Justice. (Former § 12071, subd. (a)(1).) A person selling a firearm who verified the buyer had a federal firearms license but was unaware the buyer lacked some business license required by local government would technically violate section 12072(d). This factor weighs against a finding of strict liability.

With respect to the difficulty of proving the defendant's mental state, "[a]n actual knowledge element has significant potential to impair effective enforcement." (*Jorge M.,* *supra,* 23 Cal.4th at p. 884.) An element that the defendant knew or *should have known* the other party was unlicensed would be less of a burden. (See *id.* at p. 885.) Evidence that a defendant did not conduct the transaction in a retail store, did not see a license or inquire into the other party's licensed status, and had no other reason to believe the other party was licensed could satisfy such an element.

After consideration of all the above factors, we conclude the inclusion of a knowledge requirement in other subdivisions of section 12072 and the absence of such a requirement in section 12072(d) is an extremely strong indication of legislative intent. None of the other factors are sufficient to outweigh this. The statutory structure compels our conclusion that to prove a violation of section 12072(d), the People need not prove a

9

defendant knew or should have known that the other party to the firearms transaction was unlicensed.

We note, however, our Supreme Court's admonishment that "the modern trend is to require proof of some criminal intent or knowledge in order to secure a criminal conviction." (*Jennings, supra,* 34 Cal.4th at p. 278.) In *Jennings*, after finding a crime to be a public welfare offense, the court discussed the availability of a reasonable mistake of fact defense. "As a general matter, . . . a mistake of fact defense is not available unless the mistake disproves an element of the offense." (*Id.* at p. 277.) However, *Jennings* noted cases in which a reasonable mistake of fact defense was permitted even though knowledge of the fact was not an element of the crime. (*Id.* at pp. 278–279.) "These cases follow the modern trend away from imposing strict liability for criminal offenses and to require some showing of knowledge or criminal intent, even if only criminal negligence. [Citation.] In addition to interpreting statutory language to require some showing of criminal intent, . . . we may permit a conviction absent evidence of knowledge, but allow a defendant to raise a mistake of fact in his defense . . . . Although by tradition (and due process) the People often have the burden to prove knowledge or intent, shifting the burden to the defendant to prove his lack of guilty or criminal intent is in some cases also permissible." (*Id.* at pp. 279–280.) Following this modern trend, *Jennings* construed a public welfare offense to permit a reasonable mistake of fact defense. (*Id.* at pp. 280–281.)

To allow an affirmative defense to section 12072(d) that a defendant actually and reasonably believed the other party to the firearms transaction was licensed would follow the "modern trend" away from strict liability. (*Jennings, supra,* 34 Cal.4th at p. 278.) It would be appropriate in light of the potential penalty of up to four years' imprisonment. It would also prevent the unfairness that would result if a defendant took reasonable measures to ascertain the other party was licensed, when the party was in fact not licensed.

We need not decide the availability of such a defense in this case, however. There is no evidence in the record that appellant raised this issue below. He did not seek an

10

instruction on any such element or defense. His closing argument focused entirely on an entrapment defense and attacking Martin's credibility. Appellant's testimony that he assumed Martin was a gun broker was not even elicited during his direct examination; instead, it came out during the People's cross-examination.

Where, as here, a defendant does not rely on or request instruction on an affirmative defense, a sua sponte duty to instruct arises only " 'if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 157, italics omitted.) No substantial evidence supported a mistake of fact defense. Appellant testified he believed Martin was a firearms dealer. Even if the jury credited this testimony, it showed only an actual mistake of fact, not a reasonable one. The only explanation appellant provided for his belief is that Martin—who appellant met shortly before the sale—told appellant he sold guns online. There was no evidence appellant saw a firearms license in Martin's garage or elsewhere. There was no evidence appellant asked Martin whether he was licensed or conducted any other form of inquiry regarding his license status. The transaction took place in a garage, not a retail store. There is no substantial evidence to support a finding that any actual belief appellant had that Martin was licensed was also a reasonable one.

## II. *Entrapment*

Appellant also argues the jury's conclusion he was not entrapped lacks substantial evidence. We disagree.

"In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally

11

law-abiding person to commit the crime.' " (*People v. Watson* (2000) 22 Cal.4th 220, 223.)

Martin testified appellant initially approached him about selling the rifle and they mutually negotiated the final price which, based on the maximum amount for which both parties agreed the rifle could be resold, was not inflated. Martin's testimony provided ample evidence that appellant was not entrapped and the jury was entitled to credit that testimony. (*People v. Smith* (2005) 37 Cal.4th 733, 739.)

DISPOSITION

The judgment is affirmed.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A139318)

13

Superior Court of Contra Costa County, No. 05-120702-6, Charles Burch, Judge.

Tamara Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and René Chacón, Deputy Attorneys General, for Plaintiff and Respondent.